**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MARZIEH M. YOUSEFI,**

    Plaintiff,

vs.                                      **Case No. 8:04-CV-2390-T-EAJ**

**JO ANNE B. BARNHART,**
**Commissioner of**
**Social Security,**

    Defendant.
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) (1994), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 14)

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. Davis v. Shalala, 85 F.2d 528, 534 (11th Cir. 1993) (citation omitted). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

On September 5, 2001, Plaintiff filed an application for benefits alleging an onset of disability beginning May 3, 2000,

2

due to difficulty with her right ankle and depression. (T 14, 83) Forty-eight years old at the time of the ALJ's decision, Plaintiff has a high school degree and past relevant work experience as a sales clerk. (T 13, 119)

Plaintiff's application was denied initially and on reconsideration. (T 70-76) A hearing was held before the ALJ on August 11, 2003. (T 12) On October 31, 2004, the ALJ issued a decision denying Plaintiff's application for benefits under the Social Security Act. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 3, 2000 and that Plaintiff's impairments were severe but did not meet or equal any impairment listed in the Listing of Impairments. (T 15) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work.[2] (T 18) While finding Plaintiff unable to return to her former type of work, the ALJ credited the testimony

---

[2] The ALJ found as follows:
> I find that the claimant retains the residual functional capacity to perform a limited range of sedentary work: she requires a sit/stand option exercisable at her discretion, including the right to take a few steps in either direction away from her workstation but not more than ten feet; can never climb any object; can occasionally balance, stoop, crouch, kneel or crawl; can never perform push or pull type activity with the right leg or foot; and can only concentrate for 1 hour at a time.

(T 18)

of a vocational expert ("VE") and concluded that Plaintiff's age, educational background, work experience, and RFC enabled her to make vocational adjustments and find work that exists in significant numbers in the national economy, such as a charge account clerk, a surveillance system monitor, or a medical supply assembler. (T 19) Consequently, the ALJ held that Plaintiff was not disabled and denied Plaintiff's claim for disability benefits. (T 19-20)

On September 24, 2004, the Appeals Council denied Plaintiff's request for review. (T 3-5) Accordingly, the Appeals Council allowed the ALJ's decision to stand. (T 3)

Plaintiff argues that the Commissioner erred by (1) not re-contacting the treating physician; and (2) denying a closed period of disability. (Dkt. 15 at 8-11)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

**A.** Plaintiff contends that the ALJ failed to re-contact the treating physician, Roy Sanders, M.D. ("Dr. Sanders") and that this was error under the circumstances of this case.

4

The ALJ stated that he accorded "significant weight" to Dr. Sanders' medical opinions. (T 17) The ALJ qualified this deference, however, by noting that Dr. Sanders' comments "cannot be given weight without placing them in the proper context since his comments have sometimes been simply jotted on a prescription pad or have been incomplete responses to poorly worded questions infused with regulatory terminology." (T 17)

On August 6, 2001, it was Dr. Sanders' opinion that Plaintiff could work 3-4 hours per day. (T 291) On August 10, 2002, Dr. Sanders wrote on a prescription pad that Plaintiff could "return to work 4 hours a day." (T 343) Responding to a three-page SSA questionnaire on a different date[3], Dr. Sanders was of the opinion that Plaintiff could return to sedentary work. (T 319)

The ALJ construed Dr. Sanders' various opinions as indicating that Dr. Sanders intended to limit Plaintiff only to part-time work as a sales clerk, not that Plaintiff was limited to part-time work regardless of the type of job. (T 17) The ALJ explained:

---

[3] It is not clear from the record when Dr. Sanders filled out this questionnaire. It is stamped as being "Received" by the "Medical Records Department" on March 29, 2002, but Dr. Sanders' response to the first question explains that Dr. Sanders has treated Plaintiff up until August 20, 2002. (T 318)

5

> This interpretation is more logical and in accordance with the evidence of record than concluding that Dr. Sanders felt that, regardless of the type of job the claimant was only capable of working part-time, especially since the claimant actually returned to her sales clerk job on a part-time basis, and Dr. Sanders' opinion regarding sedentary work did not include a time limitation.

(T 17) According to the ALJ, the significant standing and walking required to perform the sales clerk job explained Dr. Sanders' opinions. (T 17)

> The ALJ further observed:
>
> Dr. Sanders' timeframe is not correct because, except for small periods of time immediately following the accident and her surgeries, the claimant has been capable of productive physical activity.  On November 7, 2000, after the accident, the claimant was returned to her activities as tolerated despite her pain complaints (Exhibit 10F/19).  On July 24, 2001, after her first surgery, her fusion was described as being solid with excellent position and alignment (Exhibit 10F/12).  Also, even though the claimant complained of pain from the hardware, she refused narcotics and extra strength Tylenol.  On August 6, 2001, she was cleared to work 3-4 hours a day (Exhibit 10F/11).  Then, on January 8, 2002, after the removal of the hardware, the claimant was wearing ordinary shoes and walking without a cane, crutch, brace, or elastic support, albeit with a slight limp (Exhibit 11F).  In addition, on February 12, 2002, she was full weightbearing, engaging in physical therapy, and only took Tylenol for her pain (Exhibit 10F/6).  Also, although she had an altered gait and some tenderness, she had no swelling, was able to stand on her toes, and had good range of motion in her ankle.  Dr. Sanders was unable to determine an etiology for her pain.  Thus, given the evidence, the claimant was never prevented from working for a continuous twelve months.

(T 17-18)

"It is well established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). "An ALJ, however, is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is unnecessary." Wind v. Barnhart, 133 Fed. Appx. 684, 693 (11th Cir. 2005) (citing Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999)).

In Wind, the court held that it was proper for the ALJ not to recontact the claimant's treating physician. 133 Fed. Appx. at 693. The claimant argued that because two of the treating physician's assessments were inconsistent, the ALJ had a duty to recontact this treating physician. Id. The court disagreed, however, explaining that the ALJ had fully and fairly developed the record. Id. Noting that "the claimant bears the burden of proving that she is disabled, and, consequently, she is responsible for producing evidence in support of her claim," the court found no error in the ALJ's decision not to recontact the treating physician. Id. (internal citations and corrections omitted)

Other circuits have agreed. See Jackson v. Barnhart, 368 F. Supp. 2d. 504, 507 n.1 (D.S.C. 2005) ("these regulations impose a duty to recontact a treating physician only when the record is

7

inadequate to make a determination of disability."); see also Gallegos v. Barnhart, 80 Fed. Appx. 10, 12 (9th Cir. 2003) ("[T]he ALJ did not have an obligation to seek clarification from [the treating physician] regarding possible inconsistencies in his report because there was sufficient evidence in the record to make a determination regarding disability."); White v. Massanari, 287 F.3d 903, 908 (10th Cir. 2002) ("It is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to recontact that physician.")[4]

There is substantial evidence to support the ALJ's finding that Dr. Sanders found Plaintiff capable of full-time sedentary work (because his note did not include a time limitation) and that Dr. Sanders' other findings restricting Plaintiff to working no more than four hours per day applied to her job as a sales clerk which required considerable standing and walking. The record before the ALJ was adequate to support the ALJ's finding

---

[4] Plaintiff cites Social Security Ruling ("SSR") 96-5p requiring the Commissioner to recontact the treating source for clarification of the opinion if the evidence does not support the treating source's opinion and the adjudicator cannot ascertain the basis of the opinion from the record. (Dkt. 15 at 10) "A 'Social Security Ruling'... as applied to the facts in a particular case does not have the effect of law." Wagner v. Finch, 413 F.2d 267, 268 (5th Cir. 1969); see Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981)(en banc)(Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981) The court therefore analyzes issue one under the existing case law. In any event, even if binding, SSR 96-5p was not violated in this case.

and the Commissioner did not err in failing to recontact Dr. Sanders for clarification of his opinion as to Plaintiff's residual functional capacity.  Plaintiff's arguments go to the weight the ALJ afforded conflicts in the evidence, and this court may not weigh the evidence anew as long as there is substantial evidence to support the ALJ's findings.  See Goodley, 608 F.2d at 236.

**B.**  Additionally, Plaintiff argues that the ALJ improperly denied a closed period of disability.  (Dkt. 15 at 10)  Specifically, Plaintiff alleges that from May 3, 2000, until at least June 7, 2001, she was unable to engage in substantial gainful activity.  (Dkt. 15 at 11)

Plaintiff argues that she would have met the requirements of Listing 1.02.  (Dkt. 15 at 11)  Plaintiff bears the burden of presenting specific medical evidence demonstrating she satisfies the criteria specified in Listing 1.02.  Specifically, a claimant must establish must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.  See Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).

9

Listing 1.02 provides in pertinent part as follows:

>1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
>A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 CFR Pt. 404, Subpt. P, App. 1.

Plaintiff does not point to anything in the record which satisfies her burden under Bell, supra. Instead, she argues that the ALJ erred in determining that Plaintiff was not entitled to a closed period of disability (T 18) because the ALJ focused on only part of the record, instead of the entire record in making this finding. However, the ALJ's finding that Plaintiff was "never prevented from working for a continuous twelve months" is supported by the evidence cited by the ALJ.

Although Plaintiff contends that she is entitled to a closed period of disability from May 3, 2000 until at least June 7, 2001, the AlJ specifically found that Plaintiff was returned to her activities as tolerated after her November 7, 2000 accident despite her pain complaints. (T 17) The medical record cited by

10

the ALJ (T 299-300) is a note from Dr. Sanders which confirms this finding. The ALJ further noted that "except for small periods of time immediately following the accident and her surgeries, the claimant has been capable of productive physical work activity." (T 17) As noted by the Commissioner in her memorandum of law (Dkt. 16 at 8), the medical record before the ALJ also included notations that: on October 9, 2000, Plaintiff had a normal gait even with her air splint (T 178); on November 7, 2000 Dr. Sanders stated that Plaintiff could resume her activities as tolerated (T 300); and on December 28, 2000, Plaintiff reported to Dr. Sanders that if she stands for a long period of time and attempts to work full time, she will develop pain and that if she attempts to clean the house, she will have pain the following day. (T 297)

The record provides substantial evidence for the ALJ's conclusion that Plaintiff was never unable to work for a continuous twelve months. Plaintiff's argument that the evidence supports a finding of a closed period of disability under Listing 1.02 is not supported by the record.

Accordingly, Plaintiff's claim in issue two that the ALJ incorrectly denied a closed period of disability is without merit.

11

**Conclusion**

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) The decision of the Commissioner denying Plaintiff's benefits is **AFFIRMED** and this case is dismissed, with each party to bear that party's costs and expenses;

**DONE AND ORDERED** in Tampa, Florida on this 31st day of December, 2005.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

12